IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>LINDA L. DUNN and DIANE K. CALLAHAN, personal representatives of the Estate of Harry J. Vernetti,<br><br>Defendants. | Case No. 04 C 50472<br><br>Magistrate Judge P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

On January 31, 2007, Plaintiff filed its Motion for an Order to Preclude Evidence Regarding a New Defense Theory and the Testimony of Certain Witnesses, which is the subject of this order. For the following reasons, Plaintiff's Motion is granted in part.

I. Introduction:

This case concerns the government's effort to obtain a judgment under 26 U.S.C. § 6672 against the Estate of Harry J. Vernetti for his failure to collect, account for and pay over to the IRS, income and FICA contributions due from employees of Vernetti's Mid-State's Construction Systems Corporation. In addition to seeking to preclude the defense from using any evidence of Harry Vernetti's purported cognitive problems, Plaintiff's motion originally sought to bar the testimony of Defendants, Linda Dunn and Diane Callahan. Plaintiff has since withdrawn the portion of its Motion which sought to bar Dunn and Callahan's testimony. *See* Plaintiff's Reply,

1

§ III. The following outline of events is provided to place the remaining dispute in context.

II. Background**:**

September 24, 2004, Plaintiff brought this case in the United States District Court, Middle District of Florida, due to the fact that Harry Vernetti's will was being probated in that state. On November 29, 2004, Defendants filed an answer which failed to raise Harry Vernetti's cognitive problems as an affirmative defense. On December 1, 2004, venue of the case was transferred to the Northern District of Illinois, Western Division.

On March 18, 2005, Defendants made their initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1). Nothing in these disclosures addressed Harry Vernetti's cognitive problems. On March 22, 2005, the parties submitted their Joint Status Report. The Joint Status Report characterized the principal factual issues in the case as Harry Vernetti's knowledge about the unpaid taxes, the actions he took, and the relationship he held with the corporation. Nothing in the Joint Status Report concerned the cognitive problems of Harry Vernetti.

On June 10, 2005, the Plaintiff served written discovery requests upon the Defendants, consisting of requests to admit, interrogatories and document requests. None of Defendants' responses addressed Harry Vernetti's cognitive problems. Defendants preferred instead to support their claim that Harry was not responsible for the underlying offense by pointing out that he had sold his business to his son, Phillip Vernetti, and had retired to Florida by the time the alleged violations took place.

However, during the deposition of Phillip Vernetti (Harry's son) on February 21, 2006, Harry Vernetti's cognitive problems were brought up. During his deposition, Phillip stated that

his father Harry "wasn't always coherent" during the last two to four years of his life, and that Phillip was "concerned about dementia," which he discussed with his sisters, Linda Dunn and Diane Callahan. Exhibit A to Defendants' Response at 195, 209. Phillip's brief mention of Harry's possible dementia was the first time the issue had been brought to the attention of the Plaintiff.

Harry Vernetti's cognitive problems were again brought up, this time by Defendants in the context of settlement negotiations. A letter from Defense counsel to Plaintiff's counsel dated October 3, 2006, states:

> there is another potentially significant defense of which we have just become aware and intend to further investigate and pursue which can be summarized as follows: Harry Vernetti was diagnosed with a brain tumor in September, 2003; he passed away in December, 2003. We have been informed by several persons, including Harry's prior counsel . . . who will attest that Harry may have had cognitive problems long prior to September, 2003. In fact, in early 2002 (prior to Harry's knowledge of liability), his daughter contacted Harry's physician to inform him of her concerns about Harry's mental and physical well-being. These facts would surely serve to explain Harry's inability and resulting failure to promptly respond upon being informed of the potential liability for unpaid employment taxes.

Exhibit 4 to Plaintiff's Reply. No individuals are identified in this part of the letter, nor are their telephone numbers and addresses disclosed as required under Rule 26(a). Then on October 20, 2006, Defendants motioned for and the court granted an extension of the fact discovery cut-off date from October 31, 2006, to December 29, 2006, due to ongoing settlement discussions. However, the defense did not raise their investigation of Mr. Vernetti's alleged cognitive problems in justification of the desired extension of fact discovery.

In light of Phillip Vernetti's deposition testimony from February 21, 2006, and the settlement letter from October 3, 2006, it is clear that the Defendants possessed some knowledge

3

of Harry's cognitive problems in advance of the fact discovery cut-off date of December 29, 2006. Yet Defendants did not supplement their 26(a)(1) disclosures until the very last day of fact discovery. The supplemental disclosure provided on December 29, 2006, identified for the first time witnesses expected to provide testimony concerning Harry's cognitive problems. Witnesses such as Michael Dunn (Linda Dunn's husband), Carol Shumaker and Thomas Laughlin had not been identified by the Defendants prior to this point. Defendants' supplemental disclosure also identified two doctors, Richard Nora and Bernard O'Malley, who treated Harry Vernetti. These doctors were identified as both expert and fact witnesses.

III. Discussion:

    A. <u>Whether Defendants Must Have Pled Mr. Vernetti's Cognitive Problems, if at all, as an Affirmative Defense Under Rule 8©:</u>

The parties contest whether the Defendants' use of Mr. Vernetti's cognitive problems constitutes an affirmative defense under Rule 8©. Under Rule 8©, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense*." Fed.R.Civ.P. 8© (emphasis added). "The goal of this requirement, consistent with federal practice generally, is to provide notice to the opponent, avoid surprise and undue prejudice, and afford the opponent a chance to argue, if able, why the defense is unfounded." Steven Baicker-McKee, William M. Janssen, and John B. Corr, Federal Civil Rules Handbook, 289-90 (2007 ed.) (footnote omitted).

Generally, the failure to plead an affirmative defense as required by Rule 8© results in the waiver of that defense. *See Ill. Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995). However, the court "has the discretion to allow an answer to be amended to assert an affirmative defense not raised initially." *Jackson v. Rockford Housing Auth.,* 213 F.3d 389, 392 (7th Cir. 2000) (citing Fed.R.Civ.P. 15(a) which states that "leave [to amend] shall be freely given when justice so requires").

In order to find personal liability for unpaid withholding taxes under 26 U.S.C. § 6672, two elements must be present: 1) the defendant must be a person responsible for the collection and payment of withholding taxes; and, 2) the defendant's failure to comply with the statute must be willful. *U.S. v. Landau*, 155 F.3d 93, 100 (2d Cir. 1998). "Willful action has been defined as voluntary, conscious and intentional– as opposed to accidental– decisions not to remit funds properly withheld to the government." *Id.* (quotations omitted). An individual against whom the IRS has made a § 6672(a) assessment has the burden of proving by a preponderance of evidence that one or both of the elements of liability under that section is absent. *Id*.

Defendants seek to use Mr. Vernetti's cognitive problems to directly refute the second required element, that his failure to pay over the withheld taxes was willful. As such, Defendants claim this evidence is not used as an affirmative defense. Rather it is characterized as a direct attack on a required element of Plaintiff's claim, that the failure to pay was willful.

Plaintiff claims, without citation to any legal authority in support, that Defendants have waived the mental competence issue by failing to assert it as an affirmative defense in their Answer to the Complaint. Assuming *arguendo* that Mr. Vernetti's cognitive problems do constitute an affirmative defense, the court would nevertheless allow Defendants to pursue this

5

defensive strategy despite their failure to plead it pursuant to Rule 8©. No trial date or pretrial conference date has been set, the parties have yet to file any motions for summary judgement, and Rule 15 provides a very liberal standard for the amendment of pleadings.

### B. Precluding the Use of Evidence as a Sanction Under Rule 37

Federal Rule of Civil Procedure 26 requires a party to provide certain initial disclosures automatically, without awaiting a discovery request. Fed.R.Civ.P. 26(a)(1). This initial disclosure must include "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." Fed.R.Civ.P. 26(a)(1)(A). In addition to identifying the source of such information, the disclosing party must also identify the subject of the information that they may use in support of their case. *Id.*

Rule 26 further requires that a party supplement its initial disclosures throughout the course of litigation whenever it learns that the information originally provided turns out to be "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process." Fed.R.Civ.P. 26(e)(1). The Rule also makes clear that "[a] party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed.R.Civ.P. 26(e)(2).

To ensure compliance with these rules of discovery, Rule 37 provides that any party that

"without substantial justification fails to disclose information required by Rule 26(a), or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). The Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc*, 324 F.3d 851, 857 (7th Cir. 2003). The district court enjoys broad discretion in making determinations whether Rule 26(a) violations are justified or harmless; however, the following four factors should guide the exercise of that discretion: 1) the prejudice or surprise to the party against whom the evidence is offered; 2) the ability of the party to cure the prejudice; 3) the likelihood of disruption to the trial; and 4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id*. The court will address these four elements in turn.

First, Plaintiff has suffered some degree of prejudice and surprise in learning on the last day of fact discovery that the defense would raise the issue of Harry Vernetti's cognitive problems. It is true that Phillip Vernetti testified that he and his sisters discussed the possibility that their father was suffering from dementia at his deposition on February 21, 2006. It is also true that on October 3, 2006, Plaintiff received a letter suggesting Defendants might pursue Mr. Vernetti's cognitive problems as a defense. However, Plaintiff had no foreshadowing of the type and volume of material that the Defendants produced on the last day of fact discovery.

Second, by reopening fact discovery for the limited purpose of allowing Plaintiff time to conduct discovery concerning the content of Defendants' supplemental disclosures, the court is able to cure much of the prejudice Plaintiff has suffered. However, reopening fact discovery at

7

this stage would impose additional expense and delay into the proceedings.

Third, allowing Defendants to use evidence of Harry Vernetti's cognitive problems will not disrupt the trial. A trial date has not been established at this point.

Finally, the Defendants have exhibited bad faith in revealing new witnesses on the last day of fact discovery. Defendants are the daughters of Harry Vernetti and, according to their brother Phillip's deposition testimony of February 21, 2006, they were aware of their father's cognitive problems and even discussed with Phillip the possibility that their father was suffering from dementia. Defendants were obliged under Rule 26(a)(1) to identify each individual "likely to have discoverable information that the disclosing party *may* use to support its claims or defenses," and to supplement or correct such disclosures "if the party learns that in come material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has *not otherwise been made known*." Fed.R.Civ.P.26(e)(1) (emphasis added). Defendants' conduct in this case constitutes bad faith. The Defendants have failed to comply with either the spirit or the letter of Rule 26.

The issue then becomes whether the Plaintiff was "otherwise made known" of any of the material disclosed in Defendant's last minute supplement. The Plaintiff was made aware of Defendants' claim that Harry Vernetti suffered cognitive problems through Phillip's deposition testimony. Linda Dunn, Diane Callahan and Phillip Vernetti were identified as having information concerning Harry's cognitive problems and the Defendants may use that information in their defense. The court will not prevent these siblings from testifying about their knowledge of their father's cognitive problems.

However, the remaining witnesses which were sprung on the Plaintiff at the eleventh

8

hour via the supplemental disclosure were improperly disclosed and not "otherwise made known" to the Plaintiff. Therefore, pursuant to Rule 37, Defendants are barred from using at trial, at a hearing, or an a motion any testimony from Michael Dunn, Carol Shumaker, Thomas Laughlin, Richard Nora and Bernard O'Malley concerning Harry Vernetti's cognitive problems.

IV.  Conclusion:

In light of the foregoing discussion, Plaintiff's Motion to Preclude is granted in part. The Defendants are barred from using at trial, at a hearing, or on a motion any testimony from Michael Dunn, Carol Shumaker, Thomas Laughlin, Richard Nora and Bernard O'Malley concerning Harry Vernetti's cognitive problems.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: April 12, 2007